UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-20859-CR-HUCK/OTAZO-REYES

UNITED STATES OF AMERICA,

v.

RAUL J. GUTIERREZ, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION AND ORDER

THIS CAUSE came before the Court upon the motions listed below, which were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Paul C. Huck, United States District Judge [D.E. 1018, 1072, 1074, 1094, 1118]. The undersigned held a hearing on these matters on November 4, 2015. Having heard the argument of counsel and having conducted a thorough review of the motions, the undersigned respectfully recommends or orders, as appropriate, that:

     1.     Colonial Bank, Wachovia Bank, N.A., Totalbank, Hemisphere National Bank, International Bank of Miami, and Intercredit Bank, N.A. (collectively, "Bank Group Victims"); The United States of America ("Government"); and Republic of Trinidad and Tobago's ("T&T") (collectively, "Government Parties") Joint Motion for Summary Judgment [D.E. 1003] be DENIED.

     2.     The Government Parties' Joint Motion to Strike the Declaration of Steve Roadruck [D.E. 1028] be GRANTED.

     3.     Claimant Maritime Life (Caribbean) Ltd.'s ("Maritime") Motion to Strike the Government Parties' Joint Response to Maritime's Supplement to its Response in Opposition to the Joint Motion for Summary Judgment [D.E. 1068] be DENIED AS MOOT.

     4.     The Government Parties' Motion In Limine Re: Expert Keith Rosenn [D.E. 1073] be DENIED WITHOUT PREJUDICE.

     5.     Maritime's Amended Motion for Sanctions Against the U.S.A. [D.E. 1087] be DENIED.

6.     Maritime's Motion for Leave to File Motion for Summary Judgment [D.E. 1093] be DENIED.

7.     Maritime's Motion for Leave to File Second Supplement to its Response in Opposition to Joint Motion for Summary Judgment [D.E. 1095] be DENIED as MOOT.

8.     The Government Parties' Motion in Limine regarding Testimony of Steve Roadruck [D.E. 1117] be GRANTED.

## I.  PROCEDURAL BACKGROUND

### A.     *The Criminal Proceedings*

On December 1, 2005, the Grand Jury returned an indictment against Raul J. Gutierrez ("Gutierrez"), his company Calmaquip Engineering Corporation ("Calmaquip"), and others charging them with conspiracy and substantive counts of wire fraud and bank fraud [D.E. 3].  On March 29, 2006 and May 11, 2006, the Grand Jury returned a superseding indictment and a second superseding indictment, respectively [D.E. 101, 171].  All three indictments included forfeiture allegations. [D.E. 3 at 21-22; D.E. 101 at 31-32; D.E. 171 at 31-32].

On November 7, 2006, Gutierrez entered into a Plea Agreement with the Government, whereby he pled guilty to Counts 1 and 13 of the Second Superseding Indictment and the government agreed to dismiss all other charges [D.E. 360].  As set forth in the Plea Agreement:

> Count 1 charge[d] a conspiracy from September 1996 through January 16, 2001 to commit wire fraud in violation of Title 18, United States Code, Section 1343 and to transport money obtained by fraud, in violation of Title 18, United States Code, Section 2314; all in violation of Title 18, United States Code, Section 371.  Count 13 charge[d] bank fraud on or about August 23, 2001, in violation of Title 18, United States Code Sections 1344 and 2.

Id.  With regard to forfeiture, Gutierrez agreed to the entry of a money judgment in the amount of $22,556,100.00, representing proceeds that Gutierrez and his co-conspirators obtained as a result of the violations charged in the Second Superseding Indictment. Id. at 5.  In partial satisfaction of this money judgment, Gutierrez agreed to the forfeiture of various items

of property, including: "one piece of real property located at 12850 Red Road, Coral Gables, FL 33156 titled in the name of Inversiones Rapidven, S.A." (hereafter, "the Red Road Property"). Id.  Gutierrez further agreed to "execute any and all documents necessary to transfer his right, title, and interest in the residence to the United States to be forfeited and applied towards the restitution order entered by the Court consistent with this agreement." Id.[1]

###### B.      The Forfeiture and Restitution Proceedings

On November 20, 2006, the government filed a Notice of Lis Pendens Re: Forfeiture (hereafter, "Notice") with respect to the Red Road Property [D.E. 365].  The Notice refers to the Grantee of the Red Road Property as "Inversiones Rapidven, S.A. (Harman and Shirley Marks)." Id.  Herman Marks and Shirley I. Marks, his wife, had executed a Warranty Deed in favor of Inversiones Rapidven, S.A. (hereafter, "Inversiones Rapidven") for the sale of the Red Road Property on April 13, 2000 (hereafter, "the Marks Warranty Deed") [D.E. 750 at 6-7].  The Warranty Deed had been recorded on April 20, 2000.  Id.

On January 22, 2007, the Court entered a Preliminary Order and Judgment of Forfeiture (hereafter, "Preliminary Order of Forfeiture") [D.E. 418].  The Preliminary Order of Forfeiture encompassed all of the property that Gutierrez had agreed to forfeit pursuant to the Plea Agreement, including the Red Road Property.  Id.

On February 13, 2007, Gutierrez's ex-wife, Lourdes Gutierrez ("Lourdes") filed a Third Party Emergency Petition to Determine Interest in Forfeited Asset wherein she asserted a claim to the Red Road Property pursuant to 21 U.S.C. § 853 (hereafter, "Emergency Petition") [D.E. 444].  On March 7, 2007, the Court allowed T&T and the Group Bank

---

[1] Calmaquip also pled guilty to Counts 1 and 13 of the Superseding Indictment and the remaining counts against it were dismissed [D.E. 356, 415].  According to the Government Parties, Calmaquip agreed to the forfeiture of the Red Road Property [D.E. 515 at 2-3].  Additionally, Richard Lacle, the principal of Inversiones Rapidven, S.A. pled guilty to a conspiracy charge in a Superseding Information and consented to the forfeiture of the Red Road Property [D.E. 335].

Victims to intervene in the Emergency Petition proceedings [D.E. 473]. The proceedings were abated while Lourdes and T&T litigated in state court the issue of whether Lourdes was entitled to a marital share in the Red Road Property. See Notice to Court Regarding Representation Made by the Republic of Trinidad and Tobago [D.E. 708]. In the state court litigation, T&T presented the testimony of a forensic accounting expert whose tracing analysis showed that the sources of funds for the purchase of the Red Road Property included Calmaquip and co-defendant Steve Ferguson ("Ferguson") but not Gutierrez. Id. at 5. On January 23, 2012, the Court ruled that Lourdes could not proceed with her Emergency Petition based solely upon marital rights but could proceed based on an alleged final judgment that had been entered in her favor against Gutierrez [D.E. 828]. Ultimately, the Court dismissed Lourdes' Emergency Petition with prejudice after she was unable to produce evidence of the alleged final judgment [D.E. 888].

On April 18, 2007, the Court entered an Order of Restitution [D.E. 514]. The Court ordered Gutierrez to pay restitution to T&T in the amount of $4,000,000.00 and to the Group Bank Victims in the amount of $18,556,100.00, for a total of $22,556,100.00. Id. at 1.[2] The Court directed Gutierrez to pay the restitution by selling various assets, including the Red Road Property. Id. at 2-3.

On June 12, 2007, the Court entered an Order Permitting Interlocutory Sale of Red Road Property and Granting Other Relief Regarding Order of Restitution as to Defendant Raul J. Gutierrez (hereafter, "Order for Interlocutory Sale") [D.E. 554]. The Court directed that the proceeds from the sale of the Red Road Property be placed under the control of the Attorney General subject to further orders of the Court. Id. at 2. On April 30, 2008, Robert Del Toro, Chief Customs and Border Protection Officer, executed a Deed on behalf of the

---

[2] This amount coincides with the forfeiture money judgment.

government for the sale of the Red Road Property for $2,175,000 to Simon Karam (hereafter, "the Karam Deed") [D.E. 937-9]. The Deed was recorded on May 5, 2008. Id.

On December 10, 2009, the Court determined that co-defendant Ferguson might have an interest in the Red Road Property; hence, there was to be no disbursement of proceeds from the sale of the Red Road Property until his appearance [D.E. 707].[3] On March 10, 2010, the government sent a Notice of Criminal Forfeiture regarding the Red Road Property to Ferguson at the following address: Maritime Life (Caribbean) Ltd., No 1 Chancery Lane, Port of Spain, Trinidad, West Indies [D.E. 724-1]. The Notice provided instructions on asserting a claim to the Red Road Property under the provisions of 21 U.S.C. § 853. Id.

### C.   *Maritime's Claim to the Red Road Property*

On April 14, 2010, Maritime filed a Motion for Extension of Time to file a claim to the Red Road Property pursuant to 21 U.S.C. § 853, which was granted [D.E. 724, 725]. On April 29, 2010, Maritime filed its Verified Petition for an Ancillary Hearing to Determine Third-Party Interest in Property Subject to Forfeiture (hereafter, "Petition") [D.E. 729]. Maritime noted that the Red Road Property had been sold for $2.175 million and the proceeds had been placed in the custody of the Attorney General under the terms of the Order for Interlocutory Sale. Id. at 2.[4] Maritime alleged the following facts in its Petition in support of its claim to the proceeds of the sale of the Red Road Property:

> On or around May 31, 2001, Maritime loaned to Keystone Construction Group, Inc. ("Keystone") the aggregate sum of $2,000,000 (the "Loan").

> As consideration for the Loan, Gutierrez, individually and on behalf of Calmaquip, issued a Limited Guaranty on or around May 29, 2001 in

---

[3]  On April 19, 2006, the government had reported that it was preparing a request for Ferguson to be extradited from T&T [D.E. 184]. On June 26, 2006, an arrest warrant was issued for Ferguson [D.E. 218]. On January 17, 2007, Ferguson was placed in fugitive status [D.E. 408].
[4]  Due to the sale, references herein to the Red Road Property may also be deemed to apply to the sales proceeds.

5

favor of Maritime's wholly owned subsidiary, Keystone Property Developers Ltd. ("KPD") (the "Limited Guaranty").[5]

➤ By the terms of the Limited Guaranty, Gutierrez, individually and on behalf of Calmaquip, agreed to issue to KPD a preferred stock guaranty in the amount of $2,000,000, to accrue interest in the amount of 7% per year. This preferred stock was redeemable at any time at Keystone's sole discretion, at which point Gutierrez and Calmaquip's obligations under the Limited Guaranty would end.

➤ On July 7, 2001, Maritime, on its own behalf and on behalf of its wholly owned subsidiary, KPD, and Gutierrez, individually and on behalf of Calmaquip, (hereafter, the "Letter Agreement") reaffirmed Maritime's $2,000,000 loan to Keystone, but agreed to amend the Limited Guaranty such that the Loan "would be treated as a demand loan at the rate of interest of 7% compounded annually," which Gutierrez would "continue to guarantee . . . until repayment in full by Keystone."[6]

➤ By the Letter Agreement, Maritime, on its own behalf and on behalf of its wholly owned subsidiary, KPD, also agreed to forego the "preference shares" required by the Limited Guaranty.

➤ As consideration for the obligations Maritime agreed to undertake in the Letter Agreement, Gutierrez, individually and on behalf of Calmaquip, executed on July 24, 2001, a Collateral Assignment in Support of Guaranty Agreement (the "Collateral Assignment"), which incorporates the Limited Guaranty by reference.[7]

➤ The Collateral Assignment is itself supported by value and consideration given by Maritime, namely, its promise in the Letter Agreement to treat the Loan as a "demand loan at the rate of interest of 7% compounded annually" and to forego the "preference shares'" required by the Limited Guaranty.

➤ Under the Collateral Assignment, Gutierrez, individually and on behalf of Calmaquip, "grant[ed] a security interest and assign[ed] to [KPD] and its parent company [Maritime] all of the right, title, and beneficial interest in and to the property know[n] and assessed as" the Red Road Property.[8]

---

[5] Maritime attached the Limited Guaranty as Exhibit A to the Petition [D.E. 729-1].
[6] Maritime attached the Letter Agreement as Exhibit B to the Petition [D.E. 729-2].
[7] Maritime attached the Collateral Assignment as Exhibit C to the Petition [D.E. 729-3].
[8] Maritime further alleged that KPD had separately assigned all of its legal right, title, and interest in the Red Road Property arising from the Collateral Assignment to Maritime.

> ➢ Moreover, the Collateral Assignment incorporates by reference the Limited Guaranty and notes that "[t]his assignment is made and given as security and guaranty for the prompt payment when due of any and all obligations of [Keystone] to [Maritime and KPD] in the aggregate amount of $2,000,000 plus accrued simple interest at the rate of 7% per annum."

> ➢ Gutierrez, individually and on behalf of Calmaquip, also agreed to indemnify Maritime against claims from any individual or entity claiming to have a superior interest in the Red Road Property and to pay Maritime the attorneys' fees and costs it might incur in enforcing the Limited Guaranty or the Collateral Assignment.

Id. at 2-4.[9]

On May 21, 2010, the Government moved to strike Maritime's Petition [D.E. 735]. According to the Government, Maritime lacked standing because the documents upon which it relied for its claim were unrecorded; hence, Maritime was merely an "unsecured creditor". Id. at 2. T&T, in turn, argued that the Petition should be summarily denied on a number of legal grounds or, in the alternative, that discovery should be permitted due to the "highly suspicious" circumstances surrounding the Collateral Assignment [D.E. 737 at 19]. The Group Bank Victims joined in T&T's response [D.E. 738].

### D. Maritime's Motion for Summary Judgment

On September 10, 2012, Maritime moved for summary judgment on its Petition [D.E. 901]. On May 16, 2014, Magistrate Judge Edwin G. Torres submitted his Report and Recommendations recommending that Maritime's Motion for Summary Judgment be denied [D.E. 962]. Magistrate Judge Torres found that "genuine issues of material fact exist[ed] as to the bona fides of the Collateral Assignment," which document "is the linchpin of Maritime's claim to the Red Road [P]roperty." Id. at 9. On July 10, 2014, the Court adopted the Report and Recommendations and denied Maritime's Motion for Summary Judgment. See Order on

---

[9] Maritime further alleged that the Loan had not been paid. Id. at 5.

Report and Recommendations [D.E. 974].

In that Order, the Court made the following comments regarding the role of T&T and the Group Bank Victims (referred to as "the Trinidad entities") in litigating Maritime's Petition:

> [T]he Court notes that the Trinidad entities do not have a claim in this matter, rather, the Trinidad entities' continued work on this matter shall be on behalf of the United States Government's Claim.  As indicated at the [July 9, 2014] hearing and previously, the Government, not the Trinidad entities, is the party asserting forfeiture rights against Raul J. Gutierrez.  However, as previously indicated, the Court has allowed the Trinidad entities to intervene for the purpose of assisting the Government because if the Government prevails in its forfeiture claim, the Trinidad entities may ultimately be the real beneficiaries as victims of Gutierrez' criminal activity under a restitution theory.

Id. at 1 and n.1.  Additionally, the Court ruled that "the Government is not estopped from taking the position that Gutierrez was not the owner of the Red Road [P]roperty." Id. at 2. Finally, the Court granted the parties leave to conduct discovery and engage in other pretrial matters, and directed them to notify the Court by a date certain of their suggested trial and mediation dates.  Id.

Thereafter, the undersigned resolved several discovery disputes [D.E. 1000, 1009, 1017, 1032, 1047, 1061, 1081, 1085, 1086, 1091, 1121].  Also, the parties engaged in mediation without success [D.E. 1123].  Thus, the undersigned proceeds to address the referred substantive motions.

## II.  THE GOVERNMENT PARTIES' JOINT MOTION FOR SUMMARY JUDGMENT

In their Joint Motion for Summary Judgment [D.E. 1003], the Government Parties present what they characterize as two pure questions of law that are dispositive of Maritime's Petition because the answer to both questions is "No."  The questions are: (1) is the Collateral Assignment legally sufficient to create in Maritime a lien that is recognized under 21 U.S.C. §

853; and if so, (2) does the Collateral Assignment convey to Maritime a cognizable interest in and to the Red Road Property. Id. at 3.[10]  As explained below, the undersigned finds that the Government Parties' legal theories are not well grounded; hence, they are not entitled to the judgment as a matter of law that they seek as to Maritime's Petition.

### A.   *Summary Judgment Standard*[11]

Under Rule 32.2(c)(1)(B), a party in an ancillary proceeding can move for summary judgment pursuant to Fed. R. Civ. P. 56 prior to a court hearing on the third-party's claim. See United States v. Hovind, No. 3:06cr83/MCR, 2009 WL 2369340, at *3 (N.D. Fla. July 29, 2009). The usual summary judgment standard applies, meaning summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter

---

[10]  The Government Parties have not conceded the *bona fides* of the Collateral Assignment, as to which Magistrate Judge Torres found that genuine issues of material fact existed in recommending the denial of Maritime's Motion for Summary Judgment [D.E. 962 at 9].  See Government Parties' Reply [D.E. 1030 at 2 n.2].

[11]  The following recitation is taken from Magistrate Judge Torres' Report and Recommendations [D.E. 962 at 3-4].

of law." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In

opposing a motion for summary judgment, the non-moving party may not rely solely on the

pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions

that specific facts exist demonstrating a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); see

also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Further, the existence of a "scintilla"

of evidence in support of the nonmovant's position is insufficient; there must be evidence on

which the fact-finder could reasonably find for the non-movant.  Andersen v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986).  Likewise, a court need not permit a case to proceed when the

inferences that are drawn from the evidence, and upon which the non-movant relies, are

"implausible."  Matsushita, 475 U.S. at 592-94; Mize v. Jefferson City Bd. of Educ., 93 F.3d

739, 743 (11th Cir. 1996).

### B.      The Criminal Forfeiture Statute, 21 U.S.C. § 853

Third-party proceedings ancillary to a criminal forfeiture prosecution are governed by 21

U.S.C. § 853(n) and Fed. R. Crim. P. 32.2.  See United States v. Davenport, 668 F.3d 1316, 1320

(11th Cir. 2012).  Title 21, United States Code, Section 853 provides, in pertinent part:

(a) Property subject to criminal forfeiture

Any person convicted of a violation of this subchapter or subchapter II of this
chapter punishable by imprisonment for more than one year shall forfeit to the
United States, irrespective of any provision of State law--

(1) any property constituting, or derived from, any proceeds the person
obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or
part, to commit, or to facilitate the commission of, such violation;

***

(c) Third party transfers

All right, title, and interest in property described in subsection (a) of this section

vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

***

(n) Third party interests

***

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

***

(p) Forfeiture of substitute property

(1) In general

Paragraph (2) of this subsection shall apply, if any property described in subsection (a) of this section, as a result of any act or omission of the defendant--

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

11

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

(2) Substitute property

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

21 U.S.C. § 853.

### C.    The Contours of Section 853

[Section 853] protects only two classes of petitioners, those whose legal interests in the property were superior to the interest of the United States vested through the commission of an act giving rise to forfeiture and "bona fide purchasers for value" without knowledge of the forfeitability of the defendant's assets.

U.S. v. Watkins, 320 F.3d 1279, 1282 (11th Cir. 2003) (citing U.S. v. Kennedy, 201 F.3d 1324,

1328-29 (11th Cir. 2000). In U.S. v. McCorkle, 143 F. Supp. 2d 1311 (M.D. Fla. 2001), the

court opined:

It is easy to understand why Congress would choose to take the good faith purchaser doctrine in UCC § 2–403 and codify it in 21 U.S.C. § 853(n)(6)(B). Section 853(n)(6)(B) ensures that, if a defendant transfers the forfeitable property for value to a purchaser, who at the time of the purchase knew nothing of the government's forfeitable interest in the property, the government may not later take the property away from the innocent purchaser. Extension of the good faith purchaser exception to the forfeiture context facilitates commerce, as it does in the general commercial law context, by removing an impediment to commercial transactions—namely, the need for a purchaser to engage in exhaustive research in order to discover whether there are competing claims to the property prior to consummating a sale. This Court will not hold good faith lenders strictly liable for knowing of the borrower's felonies. Congress has required only that the claimant be "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B).

Id. at 1325.

Applying these commercial law concepts, the Eleventh Circuit in Watkins ruled that "unsecured or general creditors cannot be considered bona fide purchasers for value within the meaning of § 853(n)(6)(B)." Watkins, 320 F.3d at 1283. In Watkins, the Eleventh Circuit joined the majority of view on this question as expressed by the Second Circuit in U.S. v. Ribadeneira, 105 F.3d 833, 836 (2d Cir. 1997); the District of Columbia Circuit in United States v. BCCI Holdings (Luxemburg), S.A., 46 F.3d 1185, 1191-1192 (D.C. Cir. 1995) (interpreting a parallel provision of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963(l)(6)(B)); and the Sixth Circuit in U.S. v. Campos, 859 F.2d 1233, 1238 (6th Cir. 1988); and rejected the minority view expressed by the Fourth Circuit in U.S. v. Reckmeyer, 836 F.2d 200, 205-06 (4th Cir. 1987). Watkins, 320 F.3d at 1282-83.[12] The Eleventh Circuit explained:

> Unlike secured creditors, general creditors cannot point to any one specific asset and claim that they are entitled to payment out of the value of that specific asset. General creditors instead enjoy a legal interest in the entire estate of the debtor. By this very definition, unsecured creditors plainly fall outside the scope of § 853(n)(6)(B), which pertains to bona fide purchasers for value of the right, title or interest *in the property* in question. . . . Because their interest lies against the debtor personally as opposed to any specific property that they purchased from the debtor, unsecured creditors simply cannot be considered bona fide purchasers as that term is commonly defined.

Id. (emphasis in original) (citations omitted).  A secured creditor is defined as: "A creditor who has the right, on the debtor's default, to proceed against collateral and apply it to the payment of the debt." See Black's Law Dictionary (10th ed. 2014) (citing UCC § 9-102(a)(73)).  For a security interest to attach to collateral, the debtor must sign a security agreement containing a description of the collateral, value must be given, and the debtor must have rights in the collateral. In re Dillard Ford, Inc., 940 F.2d 1507, 1511(11th Cir. 1991) (citing U.C.C. § 9-203(1)(a)-(c)).

---

[12] See also McCorkle, 143 F. Supp. 2d at 1320 ("Reckmeyer is wrong. This Court applies the majority rule in agreement with the Second, Sixth, and D.C. Circuits—that unsecured creditors are not bona fide purchasers under § 853(n)(6)(B).").

Application of these principles is evident in U.S. v. Eldick, No. 1:02-CR-00038-MP, 2005 WL 2861130 (N.D. Fla. Nov. 1, 2005), where the court rejected claimant's assertion of rights to a number of forfeited parcels of real property. The claim was wholly based on the theory that funds collected by defendant (claimant's brother) while pretending to be a medical doctor were fraudulently obtained and should have gone instead to claimant for services performed by him at the brothers' medical clinic instead of towards the purchase of the real property parcels. Id. at *1. The court found that, even if defendant had breached some kind of contract with claimant, the latter was merely an unsecured creditor who could not challenge the forfeiture. Id. (citing Watkins, 320 F.3d at 1283-84).

**D.    The Government Parties' First Argument**

Relying on U.S. v. Caro, No. 08-20044-CR, 2010 WL 680939 (S.D. Fla. Feb. 23, 2010), the Government Parties argue that, to be a secured creditor as required by Watkins, Maritime had to record the Collateral Assignment.[13]

In Caro, Defendants Juan Rene Caro, Jr. ("Caro") and Maytemar Corporation ("Maytemar") (collectively, "Caro Defendants") were charged with a money laundering conspiracy, which spanned from August, 2005 to January 17, 2008. After they were convicted, the Court entered a Preliminary Order of Forfeiture, directing the forfeiture of the Caro Defendants' interest in the real property located at 3149 S.W. 38th Court and 3183 S.W. 38th Court (hereafter, "38th Court Property"). Thereafter, Claimant Omar Bakos in his capacity as Stuttgart Collision's Last Officer, Director and Agent ("Bakos") filed a petition pursuant to 21 U.S.C. §853. Bakos had sold the 38th Court Property to Caro in July, 2006 for no compensation,

---

[13]   It is undisputed that the Collateral Assignment was not recorded. See Government Parties' Joint Statement of Undisputed Material Facts [D.E. 1004 at ¶ 2]; Maritime's Statement of Material Facts [D.E. 1015 at ¶ 2].

which sale was immediately recorded. However, Bakos claimed that, pursuant to an agreement that was not recorded until March 17, 2009, he was entitled to 30% of the net gain on the subsequent sale of the 38th Court Property. The <u>Caro</u> court found that Bakos had no interest in the 38th Court Property because he had sold the property outright without reservation and had merely deferred his compensation. Moreover, assuming that Bakos did have an interest, he could not establish that this interest was vested in him or was superior to Caro's interest under 21 U.S.C. §853(n)(6)(A). The <u>Caro</u> court went on to find that Bakos' failure to record the agreement until a time well after the Government came into possession of the 38th Court Property as early as August, 2005 (by virtue of the relation back doctrine) meant that the Government took free of any alleged interest of Bakos. The <u>Caro</u> court also found that Bakos was not a bona fide purchaser for value under 21 U.S.C. §853(n)(6)(B). First, Bakos did not have an interest in the 38th Court Property because he sold it outright. Next, Bakos was not a bona fide purchaser for fair market value because he was not a subsequent purchaser of the 38th Court Property and he did not perfect his claimed interest until the recordation date of March 17, 2009. Finally, Bakos could not claim lack of notice prior to the time he secured his claim of lien by recording the agreement on March 17, 2009, because the 38th Court Property was listed as forfeitable in the indictment, it was the subject of notices of lis pendens, and it was within the scope of the Preliminary Order of Forfeiture.

The <u>Caro</u> court's multi-pronged analysis does not support the absolute proposition advocated by the Government Parties that the holder of an unrecorded secured interest cannot claim third-party rights under Section 853. Indeed, the opinions in <u>Watkins</u>, <u>Ribadeneira</u>, <u>BCCI Holdings</u>, and <u>Campos</u>, which bar unsecured creditors from claiming under Section 853, make no mention of a recording requirement; and the definition of secured creditor does not include a

recording requirement.   See Watkins, 320 F.3d 1279; Ribadeneira, 105 F.3d 833; BCCI

Holdings, 46 F.3d 1185; Campos, 859 F.2d 1233; Black's Law Dictionary; UCC § 9-102(a)(73).

Further, the undersigned's research has failed to uncover any case other than Caro addressing the

necessity for recordation in the context of a claim to real property as opposed to personal

property.[14]

Moreover, "[t]he law in Florida has always been that an unrecorded deed does not affect

its validity as between the parties and their privies . . . [but] an unrecorded deed is not good or

effectual in law or equity against creditors or subsequent purchasers for valuable consideration

who are without notice of the transaction." Fryer v. Morgan, 714 So.2d 542, 545 (Fla. 3d DCA

1998) (citing Fla. Stat. § 695.01(1)).  In stating that the Government took free of any alleged

interest of Bakos, the Caro court appears to have treated the Government as a creditor or

subsequent purchaser.   However, the Government's forfeiture rights do not arise from any

commercial transaction; they arise solely from a defendant's criminal conduct.  21 U.S.C. §

853(a) (property that is proceeds from a crime or that was used to commit a crime is subject to

---

[14] The Caro court cited McCorkle for the proposition that, "Until a person perfects a lien, he is merely an unsecured creditor with no interest in a particular asset." Caro 2010 WL 680939, at *6 (citing McCorkle, 143 F. Supp. 2d at 1322-23). In that section of its opinion, however, the McCorkle court was addressing a claim by United Parcel Service ("UPS") to $264,096.90 in unspecified assets or funds forfeited to the Government, which claim was predicated on a state court judgment obtained by UPS for unpaid shipping services plus costs, attorney's fees and interest. McCorkle, 143 F. Supp. 2d at interest. By contrast, in addressing a claim to real property by C.V. Butler Farms, Inc. ("C.V. Butler") the McCorkle court simply noted that "the mortgage between McCorkle and C.V. Butler was a legitimate transaction, supported by a recorded mortgage and note" rather than a "sham transaction to further McCorkle's fraudulent scheme." Id. at 1324.

In U.S. v. Starcher, 883 F. Supp. 2d 1175, 1179-81 (M.D. Fla. 2012) the court rejected a claim by petitioners who had failed to perfect their interest in an aircraft. In U.S. v. Carmichael, 440 F. Supp. 2d 1280, 1281-83 (M.D. Ala. 2006), the court found that a claimant who allegedly furnished materials for the construction of forfeited property was an unsecured creditor because it had never filed a materialmen's lien or obtained a judgment lien for the claimed amount. In U.S. v. Speed Joyeros, S.A., 410 F. Supp. 2d 121, 125-26 (E.D.N.Y. 2006) employees claiming wages were deemed unsecured creditors even though they perfected a Panamanian order of attachment against forfeited bank accounts because the order of attachment post-dated the start of the underlying conspiracy.

16

forfeiture).[15]  Thus, the undersigned declines to adopt the Government Parties' reading of Caro

as barring Maritime's claim for failure to record the Collateral Assignment.

### E.      The Government Parties' Second Argument

Alternatively, the Government Parties argue that the Collateral Assignment did not

convey to Maritime a cognizable interest in and to the Red Road Property because the property

was always owned by Inversiones Rapidven.  The Government Parties contend that Inversiones

Rapidven was the sole legal, record owner and titleholder of the Red Road Property from

April, 2000 until it was sold to Simon Karam pursuant to the Order for Interlocutory Sale in

April, 2008   See Government Parties' Joint Statement of Undisputed Material Facts [D.E.

1004 at ¶¶ 4, 7] (citing to the Marks Warranty Deed and the Karam Deed).  The Government

Parties also rely on two depositions of Gutierrez in which they claim that "Gutierrez

confirmed under oath that Inversiones Rapidven was the owner of the Red Road Property and

that he did not own Inversiones Rapidven."  See Government Parties' Joint Statement of

Undisputed Material Facts [D.E. 1004 at ¶ 5-6] (citing Deposition of Gutierrez on May 29,

2009 [D.E. 922-1] and Deposition of Gutierrez on November 29, 2012 [D.E. 937-2]).

However, Maritime disputes these contentions and claims that, at all times material to the

Government Parties' Motion for Summary Judgment, Gutierrez owned the Red Road

Property.  See Maritime's Statement of Material Facts [D.E. 1015 at ¶¶ 4-7].  Maritime relies

for its position on:

> ➢ Various court documents, including Gutierrez's Plea Agreement, which
> reference Gutierrez's right, title and interest in the Red Road Property and his
> funding of the repairs and renovations to the property. Id. at ¶ 4(a)-(e), (m).

> ➢ Statements from Gutierrez's deposition that he bought the Red Road Property
> through Inversiones Rapidven; that from the very beginning it was to be his

---

[15]  By contrast, the Government is a creditor for tax deficiencies.  U.S. v. Fernon, 640 F.2d 609, 611 (5th
Cir. Unit B 1981).

house, his residence; that he resided there with his wife and minor child for approximately five years; and that he directed its purchase, repair, and renovation. Id. at ¶ 4(f).

➢ The Declaration of Steve Roadruck ("Roadruck") (hereafter, "Roadruck Declaration") that Gutierrez owned the Red Road Property and Inversiones Rapidven. Id. at ¶ 4(g).[16]

➢ T&T's position in a different litigation that Gutierrez was the owner or beneficial owner of the Red Road Property. Id. at ¶ 4(h).

➢ Gutierrez's statement in the Collateral Assignment that he was the owner of the beneficial interest in the Red Road Property. Id. at ¶ 4(i).

➢ A letter from Gutierrez to Lacle/Inversiones Rapidven dated July 26, 2001 stating:
> Dear Richard,
> I am writing to inform you that I arranged a loan for Keystone Construction Group Inc. from Maritime Life Caribbean Limited in the sum of $2,000,000 with interest at the rate of 7% per annum. This loan is personally guaranteed by me and I have agreed to assign my interest in the Red Road Property to Maritime Life Caribbean Limited up to the amount of $2,000,000 with interest as stated above. In addition I will be using funds from Keystone Construction Group Inc. to improve the property and Maritime Life Caribbean Limited has consented to this arrangement. Please note this assignment in the company records of Inversiones Rapidven.

Id. at ¶ 4(j).

➢ The deposition testimony of Special Agent Brian Davis (hereafter, "S/A Davis"), who was the lead agent in the criminal case against Gutierrez, confirming that his investigation had determined that the Red Road Property was Gutierrez's house;

---

[16] The Roadruck Declaration consists entirely of statements made to Roadruck by Lacle in an interview conducted on January 6, 2015 in Aruba [D.E. 1014-5 at 1]. The Government Parties' argue that the Roadruck Declaration is improper summary judgment evidence because it does not satisfy the requirements of Fed. R. Civ. P. 56(c)(4) that it be made on personal knowledge and set out facts that would be admissible in evidence. See Government Parties' Joint Motion to Strike the Declaration of Steve Roadruck [D.E. 1028]. The undersigned agrees that the Roadruck Declaration is all hearsay and is not based on Roadruck's personal knowledge, hence is not admissible in evidence. The undersigned addressed this issue at the November 4, 2015 hearing and did not find persuasive Maritime's counter-arguments that the statements in the Roadruck Declaration could be rendered admissible by Lacle's anticipated deposition testimony. Should Maritime succeed in its efforts to depose Lacle in Aruba [D.E. 1134] then it can rely on Lacle's testimony rather than the Roadruck Declaration at trial. Therefore, the undersigned grants the Government Parties' Joint Motion to Strike the Declaration of Steve Roadruck and assigns no evidentiary value to the Roadruck Declaration. Applying the same rationale, the undersigned respectfully recommends that the Government Parties' Motion in Limine Regarding Testimony of Steve Roadruck [D.E. 1117], which seeks to exclude Roadruck's testimony at trial, be granted.

and S/A Davis' notes that Gutierrez had told the Government that he had set up Inversiones Rapidven with Lacle's assistance to hide the Red Road Property from his ex-wife. Id. at ¶ 4(k)-(l).

> The fact that Gutierrez maintained documents related to Inversiones Rapidven and the Red Road Property at Calmaquip's office. Id. at ¶ 4(n).

> The deposition testimony of Attorney Gaston Alvarez, in whose custody the shares of Inversiones Rapidven were placed, that he thought Gutierrez owned and controlled Inversiones Rapidven. Id. at ¶ 4(o).

Maritime cites to the foregoing facts and United States v. Morales, 36 F. Supp. 3d 1276 (M.D. Fla. 2014) to oppose the Government Parties' request for a judgment as a matter of law that Gutierrez had no cognizable interest in the Red Road Property to convey to Maritime by way of the Collateral Assignment. As stated by the Morales court, "Florida law presumes that the person whose name appears on a legal title is the property's owner. This presumption is rebuttable. Florida law looks to who had dominion and control over Florida property in deciding true ownership. Florida law does not clearly delineate the factors to be considered in determining whether an individual exercised dominion and control over real property." Morales, 36 F. Supp. 3d at 1291-92 (citations omitted). The undersigned finds that this combination of facts and law precludes a summary disposition as a matter of law of Maritime's third-party claim. Rather, the determination of whether Maritime has rebutted the presumption of ownership by the legal title holder, through establishing Gutierrez's dominion and control over the Red Road Property, will require factual findings not appropriate in the summary judgment context. [17]

### F. Conclusion

Having found no merit in either of the Government Parties' two arguments, the

---

[17] The undersigned is not persuaded by the Government Parties' attempts to sidestep the Morales court's clear statement of Florida law. See Government Parties' Reply [D.E. 1030 at 8-9].

undersigned respectfully recommends that their Motion for Summary Judgment be denied.

### III.  MARITIME'S AMENDED MOTION FOR SANCTIONS AGAINST THE U.S.A.

Maritime's Amended Motion for Sanctions against the Government (hereafter, "Sanctions Motion") [D.E. 1087] is predicated on Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent powers.  Rule 11 provides, in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> (c) Sanctions.
>
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11.  The imposition of sanctions pursuant to the Court's inherent powers requires a finding of bad faith.  In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006).

Maritime argues that the Government is subject to sanctions under both of these authorities for litigating the issue of whether Gutierrez had a legal interest in the Red Road

Property upon which to base the Collateral Assignment. However, the imposition of sanctions on the Government on these grounds would be inappropriate given that, as noted above, the Court has ruled that "the Government is not estopped from taking the position that Gutierrez was not the owner of the Red Road property." See Order on Report and Recommendations [D.E. 974 at 2]. Therefore, by contesting Gutierrez's ownership of the Red Road Property, the Government has not violated any of the four prongs of Rule 11(b) and has not engaged in bad faith. Accordingly, the undersigned respectfully recommends that Maritime's Sanctions Motion be denied.

### IV.  MARITIME'S MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT

As previously noted, Maritime filed a Motion for Summary Judgment which was denied after Magistrate Judge Torres submitted his Report and Recommendations finding that "genuine issues of material fact exist[ed] as to the *bona fides* of the Collateral Assignment." See Report and Recommendations [D.E. 962 at 9]; Order on Report and Recommendations [D.E. 974]. Maritime now seeks leave to file a Motion for Partial Summary Judgment [D.E. 1093]. Maritime seeks a judgment as a matter of law that the Red Road Property has been forfeited as a substitute asset pursuant to 21 U.S.C. § 853(p). See Proposed Motion for Partial Summary Judgment [D.E. 1093-2]. Maritime acknowledges that Rule 7.1(c)(2) of the Local Rules for the Southern District of Florida provides: "Filing multiple motions for partial summary judgment is prohibited, absent prior permission of the Court." S.D. Fla. L.R. 7.1(c)(2).

Maritime first argues that Rule 7.1(c)(2) does not apply because its initial motion was not one for "partial summary judgment." This argument elevates form over substance and is belied by the fact that Maritime is seeking leave to file its proposed motion rather than having filed it outright. Maritime next argues that the second summary judgment motion is justified because it

relies on matters that postdate its first summary judgment motion, namely, the Government Parties' discovery responses and the Eleventh Circuit opinion in <u>In re Rothstein, Rosenfeldt, Adler, P.A.</u> 717 F.3d 1205 (11th Cir. 2013).

Notwithstanding these arguments, it does not appear that allowing the filing of the Proposed Motion for Partial Summary Judgment, with its concomitant delay in these already protracted proceedings, would constitute a good use of judicial resources given that the Government has already stipulated that the Red Road Property "was being forfeited as a substitute asset." <u>See</u> February 7, 2012 email communication from AUSA Mark Lester to William V. Roppolo [D.E. 902-2]. Therefore, the undersigned respectfully recommends that Maritime's Motion for Leave to File Motion for Summary Judgment be denied.

## V. THE GOVERNMENT PARTIES' MOTION IN LIMINE RE: PROFESSOR ROSENN

On June 9, 2015, Maritime filed its Notice of Service of Expert Report, attaching the Declaration of Professor Rosenn (hereafter, "Rosenn Declaration") [D.E. 1059]. Therein, Professor Rosenn expresses opinions regarding bearer share corporations under Panamanian law, the purpose for creating Inversiones Rapidven as a bearer share corporation, and the application of Florida law to the relationship between Gutierrez and Inversiones Rapidven [D.E. 1059-1]. The Government Parties have filed a Motion in Limine to exclude Professor Rosenn's testimony at trial [D.E. 1073]. The Government Parties state that they filed their Motion in Limine to avoid incurring "the fees, costs, expenses and time in taking the deposition of Professor Rosenn." <u>Id.</u> at 2. The undersigned respectfully recommends that the Motion in Limine be denied without prejudice to its renewal in the form of a fully briefed *Daubert* motion after Professor Rosenn's opinions have been properly challenged in discovery.

## RECOMMENDATION

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that:

- ➢ The Government Parties' Joint Motion for Summary Judgment [D.E. 1003] be DENIED.

- ➢ Maritime's Amended Motion for Sanctions Against the U.S.A. [D.E. 1087] be DENIED.

- ➢ The Government Parties' Motion In Limine Re: Expert Keith Rosenn [D.E. 1073] be DENIED WITHOUT PREJUDICE.

- ➢ Maritime's Motion for Leave to File Motion for Summary Judgment [D.E. 1093] be DENIED.

- ➢ The Government Parties' Motion in Limine regarding Testimony of Steve Roadruck [D.E. 1117] be GRANTED.

## ORDER

Further, it is ORDERED AND ADJUDGED that:

- ➢ The Government Parties' Joint Motion to Strike the Declaration of Steve Roadruck [D.E. 1028] is GRANTED.

- ➢ Maritime's Motion to Strike the Government Parties' Joint Response to Maritime's Supplement to its Response in Opposition to the Joint Motion for Summary Judgment [D.E. 1068] is DENIED AS MOOT.

- ➢ Maritime's Motion for Leave to File Second Supplement to its Response in Opposition to Joint Motion for Summary Judgment [D.E. 1095] is DENIED as MOOT.

RESPECTFULLY RECOMMENDED AND DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of December, 2015.

*Alicia O. Reyes*

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Paul C. Huck
      Counsel of Record